**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DANIEL NARLOCK,

                Plaintiff,

-vs-                               **Case No. 6:07-CV-524-ORL-31KRS**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Daniel Narlock, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits.  Doc. No. 1.  The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).  Doc. No. 6, 8.  The case has been referred to me for issuance of a Report and Recommendation.

**I.    PROCEDURAL  HISTORY.**

Narlock applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*. (sometimes referred to herein as the Act).  R. 72-75.  He alleged that he became disabled on April 12, 2002. R. 72. Narlock's application was denied initially and on reconsideration. R. 35-45.

Narlock made a timely request for a hearing before an administrative law judge (ALJ).  R. 46.  An ALJ held a hearing on November 7, 2005.  Narlock, represented by an attorney, testified at the hearing.  Narlock's wife also testified.  R. 515-29.

After considering the testimony and the medical evidence presented, the ALJ determined that Narlock was insured under OASDI through September 30, 2008.  R. 15.  The ALJ found that although Narlock was working at the time of the hearing, he had been unable to work for more than twelve months since the alleged onset date of his disability.  *Id.*

The ALJ concluded that the medical evidence showed that Narlock had post traumatic stress disorder (PTSD), asthma, a history of seizure disorders, right foot pain, and lateral plantar fasciitis, right foot, which were severe.  These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[1]  R. 15, 20.

The ALJ found that Narlock had the residual functional capacity (RFC) to do the following:

> to lift and/or carry 10-15 pounds frequently and 35-45 pounds
> occasionally; to sit (with normal breaks) for a total of about 6
> hours in an 8-hour workday; to stand and/or walk (with normal
> breaks) for a total of about 6 hours in an 8-hour workday; and
> to have the unlimited ability to push and/or pull 15 pounds
> frequently and up to 45 pounds occasionally.  Because of his

---

[1]  The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

> foot pain, the claimant should avoid walking on uneven
> surfaces. Due to his asthma, the claimant should avoid
> exposure to fumes, dusts, odors, gases, and poor ventilation.
> He should avoid any exposure to dangerous heights and
> hazardous machinery because of his history of seizures.
> Mentally, the claimant retains the ability to understand,
> remember, and carry out at least simple, routine instructions;
> to interact appropriately with co-workers, supervisors, and the
> general public; and to respond appropriately to routine work
> pressures.

R. 20.  In reaching this conclusion, the ALJ accorded significant weight to the opinions of

Dr. MacKay, a consulting psychologist, and the professionals who rendered mental RFC

assessments after reviewing Narlock's treatment records.  R. 21-22.  The ALJ accorded

little weight to the opinion of Dr. Fairchild, a treating psychologist, finding it inconsistent

with Narlock's reported activities and Dr. Fairchild's treatment records.  R. 22.

The ALJ concluded that Narlock could not return to his past relevant work

because of the limitation to unskilled work and avoidance of uneven surfaces for walking.

R. 22.    The ALJ relied exclusively on the Medical-Vocational Guidelines (the Grids), 20

C.F.R. Pt. 404, Subpt. P, App. 2, to determine that there was unskilled work Narlock

could perform.  R. 22-23.  The ALJ relied on Social Security Ruling 85-15, 1985 WL

56857, to support his conclusion that the requirement that Narlock avoid walking on

uneven surfaces, exposure to environmental irritants and exposure to dangerous heights

and hazardous machinery would have little or no effect on the occupational base of

unskilled sedentary work.  R. 23.  Accordingly, he concluded that Narlock was not

disabled.  *Id.*

Narlock requested review of the ALJ's decision. R. 9.  On January 26, 2007, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 5-7. Narlock timely sought review of this decision by this Court.  Doc. No. 1.

## II.     JURISDICTION.

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## III.    STATEMENT OF FACTS.

I find, after a complete review of the record, that the parties' memoranda and the ALJ's decision adequately discuss the relevant evidence of record.  Accordingly, I will only summarize the pertinent evidence to protect Narlock's privacy as much as possible.

On the alleged disabiity onset date, Narlock was 34 years old.  R. 517. He attended school through about one year of college.  R. 518.

Narlock previously worked as a real estate agent, financial adviser, server/bartender, and professional surfer, among other things.  R. 518-19.  As of October 3, 2005, he began full-time work as a warehouse manager for a shutter company.  R. 519.

In 2001, Narlock worked for Morgan Stanley.  R. 519, 521.  On September 11, 2001, Narlock was in Tower 2 of the World Trade Center attending a training session when terrorists few an airplane into that tower.  He fell down a flight of stairs and broke his foot and ankle that day.  R. 519, 521.  He had not engaged in substantial gainful employment between September 11, 2001, and October 3, 2005.  R. 519, 521-22.

Narlock had difficulty at his warehouse manager job because of pain in his foot due to extensive standing.  R. 522.  Sometime his ankle locked up making it impossible for him to walk.  R. 524.  His medication caused him to suffer headaches a couple times a months that lasted a couple days.   R. 522.  He rated the foot pain as 4 to 7, his locked ankle as 10, and the headaches as 5 to 6 on a 10-point scale.  R. 523-24.  When his foot pain was significant, he had to limp or stay off his foot.  R. 523.  Changing the way he walked also caused hip and back pain.  R. 523-24.

Narlock had difficulty sleeping due to nightmares and flashbacks.  He was anxious every day, easy to anger, and had difficulty concentrating.  R. 525, 527-28.  He avoided large crowds, elevators and stairwells.  He felt depressed every day.  R. 525.

Beginning in February 2002, Robert W. Tinsley, D.P.M., treated Narlock for pain in his right foot and clicking in his ankle R. 311, 315.  Narlock reported in his medical history that he had had a seizure two years earlier, and he suffered from asthma.  R. 311, 314.[2]  Dr. Tinsley assessment was that Narlock had plantar fasciitis in the right foot.  R. 311.  Narlock had extensive physical therapy for the injury to his foot and ankle, and for plantar fasciitis.  R. 163-284, 454-71.  He was discharged on October 3, 2002, with a notation that he had minimal complaints of pain and difficulty.  R. 163.  On September 9, 2003, Dr. Tinsley found that Narlock's pain had been reduced and he had normal range of motion.  However, Narlock continued to report pain with extended standing.  R. 307.

---

[2] Records of treatment by Jeffrey A. McDougall, M.D., confirm that Narlock suffered from a seizure disorder and asthma.  R. 447, 449, 480-99.

Homi S. Cooper, M.D., examined Narlock at the request of the SSA in January 2004.  R. 376-79.  Dr. Cooper observed that Narlock had a normal gait and stance, and full range of motion in his feet and ankles.  R. 376-77.  Dr. Cooper opined that Narlock could sit, stand or walk 8 hours a day.  He could lift and carry 10 to 15 pounds frequently, and 35 to 45 pounds occasionally.  Dr. Cooper noted no other exertional or nonexertional impairments.  R. 376.

In June 2004, Narlock advised Dr. Tinsley that he was having ongoing pain in his right ankle.  R.  472.

Treatment records also confirm Narlock's mental impairment.  In early 2002, L. Scott Fairchild, Ph.D., a psychologist, evaluated Narlock.  R. 155-61.  On April 15, 2003, Dr. Fairchild prepared a mental health report.  He described Narlock's mood and affect as "[s]ad, irritable, variable, angry, [and] isolative at times."  Narlock had difficulty focusing and concentrating, and was mistrustful.  R. 286.  He also had an "inability to effectively interact and communicate professionally" and was "[v]ery critical."  R. 285. Dr. Fairchild continued to treat Narlock thereafter.  *See* R. 318-57.

On June 5, 2003, Nancy MacKay, Psy.D., examined Narlock at the request of the SSA.  R. 287-88.  After testing, Dr. MacKay observed that Narlock's attention, concentration and memory were mildly impaired.  She rated his global assessment of

functioning (GAF) score at 50, with a score of 59 in the previous year.[3]  R. 287.  She

wrote as follows:

> His ability to understand, remember, and carry out simple instructions
> appears mildly impaired.  His ability to understand, remember and carry out
> complex instructions appears moderately impairment.  Pace and
> perseverance appear moderately impaired.  Mr. Narlock's ability to
> consistently interact appropriately with co-workers and supervisors over an
> extended period of time appears moderately impaired.

R. 287.

Later in June 2003, Jeffrey L. Prickett, Psy.D., prepared a mental RFC

assessment based on review of Narlock's records.  R. 289-305.  He concluded, among

other things, that Narlock would have moderate difficulties in maintaining concentration,

persistence and pace.  R. 299, 303.  He would also be moderately limited in the ability to

understand, remember and carry out detailed instructions, and to complete a normal

workday and workweek without interruptions from psychologically based symptoms.

R. 303-04.

---

[3]  The Global Assessment of Functioning (GAF) scale is used to report an
individual's overall level of functioning. HAROLD I. KAPLAN, M.D. & BENJAMIN J.
SADOCK, M.D., SYNOPSIS OF PSYCHIATRY 299 (8th ed. 1998) (hereinafter
SYNOPSIS OF PSYCHIATRY). A GAF rating between 41 and 50 reflects: "Serious
symptoms (eg, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any
serious impairment in social, occupation, or school functioning (eg, no friends, unable to
keep a job). *Id*.  A score between 51 and 60 is defined as: "Moderate symptoms (eg, flat
affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in
social, occupational, or school functioning (eg, few friends, conflicts with peers or co-
workers)." *Id.*

On October 3, 2003, Dr. Fairchild opined that Narlock had poor interpersonal communication skills due to irritability and malaise.  He also had difficulty with sustained concentration and short term memory problems.  R. 316.

Later in October 2003, Michael H. Zelenka, Ph.D., also prepared a mental RFC assessment after review of Narlock's treatment records.  R. 356-75.   He essentially concurred with Dr. Prickett's early mental RFC assessment, except that he concluded that Narlock would also have moderate difficulties in maintaining social functioning, specifically the ability to interact appropriately with the general public.  R. 366, 372.

On July 26, 2005, Narlock advised Dr. Fairchild, that he quit his job after a problem with a supervisor.  R. 24.  Dr. Fairchild observed that Narlock's affect was constricted and that he was anxious.  His recent memory was moderately impaired, and he was distractable.  He reported angry outbursts, distressing and intrusive memories of trauma, and impaired concentration, among other things.  R. 24-25.  Dr. Fairchild's assessment was PTSD, with a current GAF score of 48.  R. 24.

Dr. Fairchild opined that Narlock would have moderate limitations in the ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions.  R. 502-03.  He would have marked limitations in the ability to understand, remember and carry out detailed instructions; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without supervision; respond appropriately to changes in the work settings, and set realistic goals or make plans independently of others.  *Id.*

In July 2004, Paul S. Beighley, M.D., a psychiatrist, examined Narlock.  After

mental status examination, Dr. Beighley opined that Narlock had an anxiety disorder not

otherwise specified with elements of PTSD and generalized anxiety disorder.  R. 505.

## IV.     STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A.  A "physical

or mental impairment" under the terms of the Act is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). In a

case seeking disability benefits under OASDI, the claimant also must show that he or

she became disabled before his or her insured status expired in order to be entitled to

disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090

(5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that

must be followed in determining whether a claimant is entitled to benefits.  In sum, an

ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?

> (2) Is the claimant's impairment severe?

> (3) Does the claimant's impairment meet or equal one of the
> specific impairments set forth in 20 C.F.R. Part 404, Subpart
> P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.

It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.      ANALYSIS.

Narlock argues that the ALJ erred in his assessment of the non-exertional limitations arising from his mental impairment, including finding his testimony regarding these limitations not entirely credible.  He asserts that his non-exertional limitations prevented him from performing a full range of work at any exertional level.  As such, he contends that exclusive reliance on the Grids at step five of the sequential evaluation was erroneous.

### A.      Mental RFC Determination.

As discussed above, the ALJ determined that Narlock's mental impairment limited him to unskilled work, that is the ability to understand, remember, and carry out simple, routine instructions.  The ALJ also determined, however, that Narlock could interact appropriately with co-workers, supervisors, and the general public and respond appropriately to routine work pressures.

In reaching this conclusion, the ALJ purported to give significant weight to the opinions of Dr. MacKay and the reviewing physicians.  However, Dr. MacKay found that Narlock would have moderate limitations in his ability to interact appropriately with co-workers and supervisors, and Dr. Zelenka opined that Narlock would have moderate limitations in his ability to interact appropriately with the general public.  The ALJ did not adequately explain why he gave significant weight to these doctors' opinions, but did not adopt all their findings.  This failure makes it impossible for the Court to determine whether substantial evidence supports the ALJ's RFC assessment.  *Cf. Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984)("A clear articulation of both fact and

-12-

law is essential to our ability to conduct a review that is both limited and meaningful.").

      *B.  Exclusive Reliance on the Grids at Step Five.*

      Because the ALJ found that Narlock had non-exertional limitations in his mental functioning, as well as environmental limitations in his ability to work, Narlock asserts that the ALJ should have called a vocational expert to testify about the jobs he could perform rather than relying exclusively on the Grids at step five of the sequential evaluation.  The Commissioner contends that reliance on the Grids was appropriate because the Grids consider the limitation to unskilled work, and the ALJ found that the environmental limitations did not erode the occupational base.

      The law in this circuit requires that the ALJ initially determine whether the claimant's alleged nonexertional impairments limit the ability to work; if they do not, then exclusive reliance on the Grids at step five of the evaluation process is appropriate. *See Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984)(citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981); *see also Broz v. Schweiker*, 677 F.2d 1351, 1363 (11th Cir. 1982)(remanding for consideration whether a claimant's nonexertional impairments significantly limited his basic work skills, and then, whether the Grids could be used), *vacated, Heckler v. Broz*, 461 U.S. 952 (1983), *adhered to on remand, Broz v. Heckler,* 711 F.2d 957 (11th Cir.), *modified in other respects*, 721 F.2d 1297 (11th Cir. 1983).

      However, if the ALJ finds that the claimant's nonexertional impairments significantly limit the claimant's basic work skills, otherwise stated as precluding the wide range of work at a given exertional level, then exclusive reliance on the Grids is not

permitted. *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (citing *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). Rather, the ALJ must turn to VE testimony regarding the specific jobs that the claimant can perform in light of the claimant's functional capacity. *See id.* at 1243; *Welch v. Bowen*, 854 F.2d 436, 439-40 (11th Cir. 1988); *Gibson v. Heckler*, 762 F.2d 1516, 1521-22 (11th Cir. 1985).

The ALJ's decision that nonexertional impairments do not significantly limit basic work skills (that is, do not preclude a wide range work at a given exertional level) must be supported by substantial evidence in the record. *See, e.g., Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989).

The ALJ correctly determined that the Grids include a category for unskilled work, which is sufficient to account for Narlock's ability to understand, remember and carry out only simple, routine instructions. *See Vuxta v. Comm'r*, 194 Fed. Appx. 874, 878 (11th Cir. 2006). However, the Grids do not account for the non-exertional environmental limitations regarding exposure to airborne irritants, work around hazards and walking on uneven surfaces. With respect to these limitations, the ALJ relied on Ruling 85-15 to conclude that the occupational base would not be eroded.

Ruling 85-15 applies only to a claimant who has no exertional impairments. *See, e.g., Williams v. Halter*, 135 F. Supp. 2d 1225, 1239 (M.D. Fla. 2001). As such, it is inapplicable in this case because the ALJ found that Narlock had exertional impairments in his ability to lift and carry. In these circumstances, an ALJ must rely on the testimony of a vocational expert to support his conclusion that Narlock's non-exertional impairments would not erode the occupational base of jobs within his exertional

capacity. *See, e.g., Phillips*, 357 F.3d at 1242.  Because the ALJ did not elicit testimony from a VE, the conclusion that Narlock's non-exertional impairments did not erode the occupational base of sedentary work is not supported by substantial evidence.

Accordingly, remand is required to permit the Commissioner (1) to reconsider Narlock's nonexertional limitations in light of Dr. MacKay and Dr. Zelenka's mental RFC assessments, and (2) to determine through use of a vocational expert whether there is work Narlock can perform.

## VI.    RECOMMENDATION.

For the reasons set forth herein, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings. I further recommend that, after the Court issues its order on this Report and Recommendation, it direct the Clerk of Court to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 21st day of July, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE